**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RUKHSANA KAUSAR, on behalf of herself and others similarly situated, | Civil Action No. 15-6027 (ES) (JAD) |
| Plaintiff, | OPINION |
| v. |  |
| GC SERVICES LIMITED PARTNERSHIP, |  |
| Defendant. |  |

**SALAS, DISTRICT JUDGE**

Pending before the Court are (i) Defendant GC Limited Partnership's ("GC") motion to dismiss and compel arbitration or, alternatively, to stay this action pending arbitration under Federal Rule of Civil Procedure 12(b)(1) (D.E. No. 72)[1] and (ii) Plaintiff Rukhsana Kausar's motion for class certification (D.E. No. 59). The Court has considered the parties' submissions and decides these matters without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court DENIES GC's motion to compel arbitration and GRANTS Kausar's motion for class certification.

## I.     Background

In February 2015, Kausar allegedly incurred a debt in connection with a Brooks Brothers credit card issued by Synchrony Bank. (D.E. No. 1, Compl. ¶¶ 13-14). Kausar alleges that Synchrony Bank "assigned, placed or transferred" her debt to GC for collection. (*Id.* ¶ 16). This case concerns the debt-collection letter GC sent Kausar and others similarly situated.

---

[1]      For simplicity, the Court will refer to GC's motion as a motion to compel arbitration.

In particular, Kausar alleges that GC's debt-collection letter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by failing to communicate per §§ 1692g(a)(4)-(5) that requests to verify the debt, or to obtain the original creditor's name and address, must be *in writing*. (*See, e.g.*, *id.* ¶ 36). Kausar also alleges that GC's letter constituted "a false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" in violation of § 1692e(10). (*Id.* ¶ 46).

## II. GC's Motion to Compel Arbitration

### A. Law

The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts." *Id.* "There is a strong federal policy in favor of arbitration, and a party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012).

But a court may refuse to enforce an arbitration agreement where the party seeking arbitration waives its right to arbitrate. *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 (3d Cir. 2010). This occurs, for example, when the "party has acted inconsistently with the right to arbitrate." *Id.* "Prejudice is the touchstone for determining whether the right to arbitrate has been waived by litigation conduct." *In re Pharmacy*, 700 F.3d at 118; *see also Nino*, 609 F.3d at 208 ("[W]e will not hesitate to hold that the right to arbitrate has been waived where a sufficient

showing of prejudice has been made by the party seeking to avoid arbitration."). The Third Circuit has held that such prejudice includes not only "substantive prejudice to the legal position of the party claiming waiver," but also "prejudice resulting from the unnecessary delay and expense incurred by the plaintiffs as a result of the defendants' belated invocation of their right to arbitrate." *Nino*, 609 F.3d at 209 (citation and internal quotation marks omitted). To be sure, "[c]onsistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in discovery." *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995) (internal citations and quotation marks omitted).

To determine whether a party has waived its right to arbitrate, courts in the Third Circuit consider six non-exclusive factors: (1) the timeliness of the motion to arbitrate; (2) the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; (3) whether the party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; (4) the extent of its non-merits motion practice; (5) its assent to the district court's pretrial orders; and (6) the extent to which both parties have engaged in discovery. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926-27 (3d Cir. 1991). "Not all the factors need to be present to justify a finding of waiver." *Nino*, 609 F.3d at 209. Instead, "the waiver determination must be based on the circumstances and context of the particular case." *Id.* (internal quotation marks omitted). "[W]aiver of the right to arbitrate based on litigation remains presumptively an issue for the court to decide." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007).

### B. Analysis

#### i. The Timeliness of GC's Motion to Compel Arbitration

The first *Hoxworth* factor considers whether the moving party moved to compel arbitration on a timely basis. 980 F.2d at 926-27. Kausar filed her Complaint on August 5, 2015. GC first notified the Court of its intention to move to compel arbitration on August 10, 2017. (D.E. No. 48). GC therefore delayed seeking arbitration for over two years. *See In re Pharmacy*, 700 F.3d at 118 (calculating delay from the complaint's filing date); *Serine v. Marshall, Dennehey, Warner, Coleman & Goggin*, No. 14-4868, 2015 WL 4644129, at *3 (E.D. Pa. Aug. 5, 2015) ("The Court finds no support in the caselaw for measuring timeliness from anything other than the filing of the Complaint.").

GC's twenty-four-month delay is even longer than the delays in cases where the Third Circuit found waiver. *See, e.g.*, *SuperMedia v. Affordable Elec., Inc.*, 565 F. App'x 144, 147 (3d Cir. 2014) (eleven-month delay); *In re Pharmacy*, 700 F.3d at 118 (ten-month delay); *Nino*, 609 F.3d at 210 (fifteen-month delay); *Hoxworth*, 980 F.2d at 925 (eleven-month delay). And GC's delay far exceeds the delays in cases where the Third Circuit found no waiver. *See, e.g.*, *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004) (thirty-eight-day delay); *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 680 (3d Cir. 2000) (one-and-a-half-month delay); *Faragalli*, 61 F.3d at 1069 (two-month delay). The Court is mindful, however, that "the length of the time period involved alone is not determinative." *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 232 (3d Cir. 2008).

GC offers an explanation for its delay. GC says it "filed its answer to this lawsuit on September 15, 2015" and "[f]rom shortly after September 15, 2015 until April 04, 2017, [GC] was requesting that Synchrony Bank confirm the existence of, and provide a copy, of the Plaintiff's

arbitration agreement." (D.E. No. 85 at 10). GC claims it "could not raise the existence of the arbitration agreement in its Answer or in status conferences prior to verifying its existence on April 04, 2017." (*Id.*).

The Court finds GC's explanation unpersuasive. For one, GC does not explain what it means by "confirm the existence of the arbitration agreement." The arbitration agreement is in Kausar's credit-card agreement, which is the same credit-card agreement GC says it relied on to collect Kausar's debt. (*See* D.E. No. 72 at 11) ("Synchrony assigned Plaintiff's account with [GC] for collection on Synchrony's behalf *under the terms of Plaintiff's credit card agreement*.") (emphasis added). And GC acknowledges that, from the start of this litigation, it suspected an arbitration agreement existed—GC says it filed an Answer and "shortly after" started asking Synchrony Bank to confirm the existence of Kausar's arbitration agreement. (D.E. No. 85 at 10). The Third Circuit has rejected a similar argument where a defendant complained about its inability to locate the applicable contract, pointing out that the defendant could have sought the agreement, or information about the agreement, through discovery. *See Nino*, 609 F.3d at 210.

More to the point, had GC informed the Court about a potential arbitration agreement, the Court could have stayed the proceedings or otherwise managed this case in a way that would not have significantly prejudiced Kausar. Instead, GC chose silence, and its "belated invocation of [its alleged] right to arbitrate" caused Kausar significant "prejudice resulting from the unnecessary delay and expense" of litigating in this forum. *See Nino*, 609 F.3d at 209. After all, "prejudice is the touchstone for determining whether the right to arbitrate has been waived by litigation conduct." *Zimmer*, 523 F.3d at 231. The Court therefore finds that the first *Hoxworth* factor strongly favors waiver.

### ii.    Whether GC Contested the Merits of Kausar's Claims

The second *Hoxworth* factor asks whether the moving party contested the merits of the plaintiff's claims.  980 F.2d at 926-27.  Before raising the issue of arbitration, GC twice moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss Kausar's Complaint for lack of subject-matter jurisdiction (D.E. Nos. 24 & 44)[2] and twice opposed Kausar's previous motions for class certification (D.E. Nos. 27 & 37).  GC argues that its Rule 12(b)(1) motions did not challenge the merits of Kausar's claims because they addressed "only the issue of Kausar's standing and, thus, the Court's subject matter jurisdiction."  (D.E. No. 85 at 11).  In opposition, Kausar does not explicitly say that GC's Rule 12(b)(1) motions challenged the merits; rather, she characterizes GC's motions as "dispositive" and explains that her "*entire* case would have been dismissed by this Court" if the motions prevailed.  (*See* D.E. No. 82 at 24) (emphasis in original).  GC does not address its opposition to Kausar's motions for class certification.

The Court agrees with GC that its Rule 12(b)(1) motions did not challenge the merits of Kausar's claims.  As GC correctly points out, this Court construed GC's motion as a "facial attack" because it did not "challenge the validity of Plaintiff's factual claims."  (D.E. No. 85 at 11-12) (citing D.E. No. 52 at 3).  Similarly, GC's oppositions to Kausar's motions for class certification primarily address whether Kausar has standing and whether she satisfied the requirements for class certification—not whether her claims are meritorious.[3]  (*See* D.E. Nos. 27 & 37).  On the whole, the second *Hoxworth* factor weighs against waiver.

---

[2]    The Court administratively terminated GC's first Rule 12(b)(1) motion so that the parties could address supplemental authority in their briefs (D.E. No. 34), and the Court denied GC's second Rule 12(b)(1) motion in an Opinion and Order (D.E. Nos. 52 & 53).

[3]    GC's opposition to class certification is not entirely silent on the merits of Kausar's claims.  (*See, e.g.*, D.E. No. 73 at 3) ("Plaintiff filed suit on August 5, 2015, alleging, *albeit inaccurately*, that the letter misstated the method for requesting verification of the debt or the name and address of the original creditor.") (emphasis added).  But these references to the merits are merely passing.

### iii.    Whether GC Informed Kausar of its Intention to Seek Arbitration

The third *Hoxworth* factor asks whether the moving party "has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings." 980 F.2d at 926-27. The parties do not dispute that GC first notified Kausar on April 4, 2017. (*See* D.E. No. 82 at 25; D.E. No. 85 at 10). GC explains that it notified Kausar's counsel "the same day defense counsel confirmed [GC's] right to arbitrate." (D.E. No. 85 at 10). Kausar, however, points out that GC (i) did not raise arbitration as one of its affirmative defenses in its Answer; (ii) did not raise arbitration in the joint discovery plan, "which specifically contains a section for anticipated motions"; and (iii) never raised arbitration "in any of the status conferences with Judge Dickson, in their responses to Plaintiff's discovery demands, or at any other time" before April 4, 2017. (D.E. No. 82 at 25). Kausar also notes that GC filed its second Rule 12(b)(1) motion after it notified her—but before it notified the Court—of its intention to seek arbitration. (*Id.*).

This factor is neutral. GC notified Kausar of its intention to arbitrate four months before it raised the issue with the Court. Thus, GC put Kausar on notice well before it moved to compel arbitration. And Kausar's reliance on *In re Pharmacy* and *Gray Holdco* is inapposite because the moving party in those cases provided no notice at all. (D.E. No. 82 at 25-26) (citing 700 F.3d at 118-19 and *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 457 (3d Cir. 2011)). But GC could have provided notice much sooner—from the start of this litigation, it suspected an arbitration agreement existed. What's more, GC filed a Rule 12(b)(1) motion *after* notifying Kausar of its intention to seek arbitration. That litigation decision is "inconsistent[] with the right to arbitrate." *Nino*, 609 F.3d at 208.

### iv.    Extent of GC's Non-Merits Motion Practice

The fourth *Hoxworth* factor considers the extent to which the moving party engaged in non-merits motion practice. 980 F.2d at 926-27. As discussed above, GC twice moved to dismiss under Rule 12(b)(1) and twice opposed Kausar's motions for class certification. In fact, GC filed its second Rule 12(b)(1) motion after it notified Kausar of its intention to seek arbitration. Kausar also highlights two discovery disputes that required Magistrate Judge Dickson's intervention (D.E. No. 82 at 25), one of which required Kausar to submit two letters to the Court (D.E. Nos. 62 & 65). All this motion practice occurred while GC suspected an arbitration agreement existed. This factor strongly favors waiver.

### v.    GC's Assent to the Court's Pretrial Orders

The fifth *Hoxworth* factor considers the moving party's assent to the court's pretrial orders. 980 F.2d at 926-27. Kausar argues this factor "weighs heavily in favor of waiver because [GC] has complied and acquiesced to *all* of this Court's numerous pretrial orders throughout the duration of this case." (D.E. No. 82 at 27) (emphasis in original). GC does not dispute that it has complied with the Court's pretrial orders, but rather argues it is "unreasonable" to expect it not to comply "when it was not able to confirm the existence of Plaintiff's arbitration agreement." (D.E. No. 85 at 12). And GC contends that "as soon as [it] was able to confirm the existence of Plaintiff's arbitration agreement, [it] made Kausar and the Court aware that it would seek to compel arbitration." (*Id.*).

The Court agrees with Kausar. *First*, GC cites no authority in support of its argument. *Second*, GC did not make the Court aware of its intention to compel arbitration as soon as it "confirmed the existence" of Kausar's agreement—it notified Kausar, then waited four months

before notifying the Court. And during that time, GC filed a Rule 12(b)(1) motion pursuant to the Court's January 4, 2017 Order. (D.E. Nos. 44 & 34). This factor favors waiver.

### vi. Extent to Which Both Parties Engaged in Discovery

The sixth *Hoxworth* factor considers the extent to which both parties have engaged in discovery. 980 F.2d at 926-27. Kausar describes the discovery thus far as "significant." (D.E. No. 82 at 28). She says the parties have "submitted interrogatories and responses to one another, produced documents, and completed all fact discovery." (*Id.*). She also points out that she twice had to seek Magistrate Judge Dickson's intervention to compel GC to turn over certain discovery materials. (*Id.*). GC acknowledges that "some discovery was exchanged long before [it] was able to confirm the existence of Plaintiff's arbitration agreement." (D.E. No. 85 at 13). But after it notified the Court of its intention to seek arbitration, it "did not promulgate any discovery or participate by responding to any significant discovery." (*Id.*). GC also notes that neither party has taken a deposition. (*Id.* at 14).

For the reasons discussed throughout this analysis, GC's attempts to minimize the relevance of its conduct before it "confirmed the existence of the arbitration agreement" fall flat. GC could have raised the issue of arbitration and the Court could have, among other things, stayed the proceedings, which would have eliminated or at least reduced significant discovery burdens until the arbitration issue was resolved. Instead, GC remained silent and the parties exchanged interrogatories, produced documents, and completed fact discovery with respect to class certification—conduct that is "by no means *de minimis*." *See Nino*, 609 F.3d at 213. This factor also favors waiver.

### vii. Conclusion

The Court is mindful that waiver is "not to be lightly inferred." *Id.* at 208. And the Court recognizes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including issues such as "waiver, delay, or a like defense to arbitrability." *Moses H. Cohen Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Yet the Court is compelled to find that, "based on the circumstances and context" of this case, GC waived any right it may have had to arbitrate. *See Nino*, 609 F.3d at 209. Taken together, the *Hoxworth* factors establish "prejudice resulting from the unnecessary delay and expense incurred by [Kausar] as a result of [GC's] belated invocation of [its] right to arbitrate." *Id.* The Court therefore denies GC's motion to compel arbitration.[4]

## III. Kausar's Motion for Class Certification

### A. Law

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). A party proposing class-action certification "bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015) (citing *Comcast*, 569 U.S. at 33). In

---

[4]         In light of the Court's finding that GC waived any right it may have had to arbitrate, the Court need not reach the parties' remaining arguments about the arbitration agreement. *See Hoxworth*, 980 F.2d at 925 (finding waiver and declining to address whether the nonsignator defendant could enforce the arbitration agreement); *SuperMedia*, 565 F. App'x at 148 (finding waiver and declining to review the arbitration provision at issue).
           The Court notes specifically that in addition to their treatment of the *Hoxworth* factors, the parties address waiver of the right to arbitrate under *Utah* law. (*See* D.E. No. 82 at 29-33; D.E. No. 85 at 14-15). The parties do not explain why they do so. (*See, e.g.*, D.E. No. 82 at 29; D.E. No. 85 at 14). The arbitration agreement provides that "Utah law shall apply to the extent state law is relevant under the FAA." (D.E. No. 72-1 at 7). But, as decisions from the Court of Appeals make clear, state law does not determine whether a party has waived its right to arbitrate in the federal courts of this Circuit—the considerations underlying *Hoxworth* do. *See, e.g.*, *SuperMedia*, 565 F. App'x at 147. The same is true even when there is an underlying choice of law question, as is often the case in disputes over arbitration. *See, e.g.*, *Gavlik Constr. Co. v. H. F. Campbell Co.*, 526 F.2d 777, 784, 785 n.18 (3d Cir. 1975). Accordingly, the Court need not consider the parties' arguments under Utah law.

particular, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)-(b)).

If a party is seeking certification under Rule 23(b)(3)—like Kausar is here—that party must first "prove by a preponderance of the evidence that the class is ascertainable." *Byrd*, 784 F.3d at 163. A court evaluating a motion for class certification "is obligated to probe behind the pleadings when necessary and conduct a 'rigorous analysis' in order to determine whether the Rule 23 certification requirements are satisfied." *Id.* (citations omitted).

To satisfy the threshold ascertainability inquiry, the party seeking certification must show that (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* (citations omitted). The ascertainability inquiry is narrow. *Id.* at 165. It "does not mean that a plaintiff must be able to identify all class members at class certification; instead, a plaintiff need only show that 'class members *can* be identified.'" *Id.* (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013)) (emphasis in original).

To satisfy Rule 23(a), the party seeking certification must show that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). *See Marcus*, 687 F.3d at 590-91. To satisfy Rule 23(b)(3), the party seeking certification must show that (1) common questions of law or fact predominate ("predominance"); and (2) a class action is the superior method for adjudication ("superiority"). *See id.* at 591 (citation omitted).

### B. Analysis

#### i. Kausar's Proposed Class

Kausar seeks certification of the following proposed class:

(1) all persons with a New Jersey address

(2) to whom GC Services Limited Partnership mailed an initial communication letter in a form materially identical or substantially similar to the letter attached as Exhibit A to the Plaintiff's Complaint (Doc. No. 1-2) that stated: (a) "However, if you do dispute all or any portion of this debt within 30 days of receiving the letter, we will obtain verification of the debt from our client and send it to you." and/or (b) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank"

(3) between August 5, 2014 through and including August 24, 2015

(4) in connection with the collection of a consumer debt

(5) that was not returned as undeliverable to GC Services Limited Partnership.

(D.E. No. 59-1 at 6).

#### ii. Kausar's Standing

To start, GC argues that Kausar's motion for class certification should be denied and her case should be dismissed because she lacks Article III standing under *Spokeo v. Robins*, 136 S. Ct. 1540 (2016). (*See* D.E. No. 73 at 7-12). GC made these same arguments in its Rule 12(b)(1) motions to dismiss. (*See* D.E. Nos. 24-1 & 44-1). The Court unequivocally rejected these arguments in a full Opinion and Order. (D.E. Nos. 52 & 53). GC's opposition nowhere mentions the Court's previous decision on Kausar's standing. For the reasons set forth in the Court's November 8, 2017 Opinion, the Court again rejects GC's arguments that Kausar lacks Article III standing under *Spokeo*.

#### iii. Ascertainability

The ascertainability inquiry requires the party seeking certification to show that (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and

administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (citations omitted).

*First*, the Court finds that the proposed class is defined with reference to objective criteria. As Kausar points out, the class "is limited in both space (New Jersey residents only) and time (between August 5, 2014 through and including August 24, 2015)." (D.E. No. 59-1 at 13). Thus, the proposed class "simply requires individuals to be New Jersey residents to whom [GC] mailed an unreturned letter containing the same legally defective language as the letter Ms. Kausar received during a limited time period." (D.E. No. 76 at 6); *see Nepomuceno v. Midland Credit Management, Inc.*, No. 14-5719, 2016 WL 3392299, at *3-4 (D.N.J. June 13, 2016) (finding a proposed class in an FDCPA case ascertainable in part because it was limited to New Jersey residents to whom the defendant sent an allegedly defective debt-collection letter during a set time period).

*Second*, the Court finds that there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. Under this prong, "a plaintiff need only show that 'class members *can* be identified.'" *Byrd*, 784 F.3d at 163 (quoting *Carrera*, 727 F.3d at 308 n.2) (emphasis in original). Kausar explains that GC's business records reveal the identities and mailing addresses of all class members (D.E. No. 59-1 at 14), and she attaches an email from GC's counsel stating that there were 1,876 people who met the class definition (D.E. No. 59-5). GC also acknowledges in its opposition that it "mailed approximately 1,876 such letters to addresses in New Jersey." (D.E. No. 73 at 21). This showing more than satisfies Kausar's burden. *See Carrera*, 727 F.3d at 308 n.2 ("Although some evidence used to satisfy ascertainability, such as corporate records, will actually identify class members at the

certification stage, ascertainability only requires the plaintiff to show that class members can be identified.  Accordingly, there is no records requirement.") (internal citation omitted).

GC advances two primary arguments in opposition.  *First*, GC argues that the proposed class is not ascertainable because each member of the class may or may not have standing under *Spokeo*, and "an extensive inquiry would be required to determine whether each alleged, absent class member has an actual, concrete injury *of his or her own* . . . ."  (D.E. No. 73 at 13-14) (emphasis in original).  GC says it "is axiomatic that each member of the proposed class must also have standing to sue."  (*Id.* at 14) (citing *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) and *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006)).

GC is incorrect.  The Third Circuit has squarely held that "unnamed, putative class members need not establish Article III standing."  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 363 (3d Cir. 2015); *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").  "Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class."  *Neale*, 794 F.3d at 363.  In *Neale*, the Third Circuit acknowledged conflicting precedent in the Eighth and Second Circuits—the two cases GC cites— and explains at length why it found those cases unpersuasive.  *See id.* at 365.

*Second*, GC argues that the proposed class is not ascertainable because "it is impossible to ascertain who (1) actually received the letter, (2) then, actually opened the letter, (3) then, actually read the letter, and (4) for those proposed class members who did, suffered the requisite 'concrete and particularized' injury to have standing to bring suit."  (D.E. No. 73 at 19).  This argument is

also without merit because "unnamed, putative class members need not establish Article III standing." *Neale*, 794 F.3d at 363. Indeed, another court in this District recently rejected this very argument. *Nepomuceno*, 2016 WL 3392299, at \*4 ("Whether the proposed definition includes individuals who did not receive Defendant's letter does not prevent the individuals in the definition from being identified and, therefore, does not affect whether Plaintiff has satisfied the ascertainability requirement."); *see id.* (explaining that "this sort of argument 'conflates the issues of ascertainability, overbreadth (or predominance) and Article III standing'") (quoting *Byrd*, 784 F.3d at 168). Kausar's proposed class is therefore ascertainable.

### iv. Numerosity

Rule 23(a)(1)'s numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." "There is no minimum number of members needed for a suit to proceed as a class action." *Marcus*, 687 F.3d at 595 (citation omitted). But the Third Circuit has observed that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong under Rule 23(a) has been met." *Id.* (citation omitted). To be sure, "Rule 23(a)(1) 'requires examination of the specific facts of each case.'" *Id.* (quoting *Gen. Tel. Co. of the N.W. v. EEOC*, 446 U.S. 318, 330 (1980)). And "numerosity—like all Rule 23 requirements—must be proven by a preponderance of the evidence." *Id.* (citation omitted).

Here, Kausar has sufficiently demonstrated that the proposed class "is so numerous that joinder of all members is impracticable." Kausar has submitted direct evidence that the proposed class comprises 1,876 members. (*See* D.E. No. 59-1 at 16) (citing D.E. Nos. 59-5 (Ex. D) & 59-6 (Ex. E)). As Kausar points out, her proposed class is far more numerous than a 124-member FDCPA class this Court recently certified. (*See id.*) (citing *Griffin v. Zager*, No. 16-1234, 2017 WL 3872401, at \*3 (D.N.J. Sept. 1, 2017)). In light of Kausar's showing, "common sense suggests

that it would be difficult or inconvenient to join all class members." *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997).

Defendant argues that Kausar "has failed to meet her burden of demonstrating the number of persons she seeks to represent *and who actually have standing to sue*." (D.E. No. 73 at 21) (emphasis in original). And GC reiterates its arguments about putative class members not having "actually received, opened and/or read the letter in question . . . ." (*Id.*). These arguments are without merit for the reasons discussed above. *See Neale*, 794 F.3d at 363 (holding that "unnamed, putative class members need not establish Article III standing").

### v.    Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where "there are questions of law or fact common to the class." Where, like here, a party is seeking class certification under Rule 23(b)(3), "the commonality requirement is subsumed by the predominance requirement." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (citation and internal quotation marks omitted). The Court will therefore address the commonality requirement with the Rule 23(b)(3) predominance requirement below.

### vi.    Typicality

Rule 23(a)(3)'s typicality requirement is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement aims "to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class . . . .'" *Marcus*, 687 F.3d at 598 (citation and internal quotation marks omitted). To determine whether a plaintiff has satisfied the typicality requirement, courts "consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Id.* (citing *In re ScheringPlough Corp. ERISA Litig.*, 589 F.3d

585, 597 (3d Cir. 2009)).  "If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises [sic] to the claims of the class members, factual differences will not render the claim atypical if it is based on the same legal theory as the claims of the class."  *Id.* (citing *Hoxworth*, 980 F.2d at 923).

Kausar alleges that GC violated the FDCPA by sending her a legally deficient debt-collection letter.  This is the same claim that the putative class members would assert.  As Kausar explains, "typicality is inherent in the class definition.  By definition, each of the class members has been subject to the same treatment as Plaintiff . . . [and] Plaintiff's claim is identical to those of the class members."  (D.E. No. 59-1 at 19).  The Court agrees with Kausar that, at this stage of the proceedings, "[t]here are no unique facts or circumstances that would render [her] claim atypical."  (*Id.*).  *See, e.g.*, *Nyby v. Convergent Outsourcing, Inc.,* No. 15-0886, 2017 WL 3315264, at *5 (D.N.J. Aug. 3, 2017) (finding typicality where the plaintiff alleges the same claims and injury as the putative class: "receiving the same Letter that allegedly violates the FDCPA"); *Weissman v. Gutworth*, No. 14-0666, 2015 WL 3384592, at *3 (D.N.J. May 26, 2015) (finding typicality where the plaintiff's claims and the putative class members' claims "are predicated on the same legal and factual circumstances: Defendants' alleged practice of mailing collection letters with legally deficient language").

GC argues that Kausar fails to show typicality because she never identifies her injury, so the Court cannot meaningfully evaluate whether her injury is typical of the putative class members' injuries.  (D.E. No. 73 at 25).  As noted above, the Court previously issued an Opinion finding that Kausar sufficiently alleged an injury.  (D.E. No. 52).  The Court declines to revisit this issue.

     **vii.**    **Adequacy**

Rule 23(a)(4)'s adequacy requirement is satisfied where "the representative parties will fairly and adequately protect the interests of the class." For this inquiry, courts consider whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously," and whether there is a "conflict between the individual's claims and those asserted on behalf of the class." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (citation omitted). The adequacy requirement "is vital, as 'class members with divergent or conflicting interests from the named plaintiffs and class counsel cannot be adequately represented.'" *Id.* (quoting *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 395 (3d Cir. 2004)) (brackets and ellipsis omitted).

Courts also must assess the adequacy of class counsel. *See* Fed. R. Civ. P. 23(g). "Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) . . . those questions have, since 2003, been governed by Rule 23(g)." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 n.13 (3d Cir. 2012) (citation omitted) (ellipsis in original). "But when the parties do not dispute the adequacy of class counsel, a court may consider the adequacy requirement strictly through the lens of Rule 23(a)(4)." *Williams v. Pressler & Pressler, LLP*, No. 11-7296, 2013 WL 5435068, at *4 (D.N.J. Sept. 27, 2014) (quoting *Dewey*, 681 F.3d at 181 n.13) (internal quotation marks and bracket omitted).

### 1. Kausar's Adequacy

Kausar provides several reasons why she thinks she is an adequate class representative. (D.E. No. 59-1 at 21-23). *First*, she asserts through her affidavit that she is knowledgeable about the case. (*See* D.E. No. 59-7 ("Kausar Aff.") ¶¶ 7-9). *Second*, she explains that she "has been actively involved with the litigation" since its start in August 2015. (D.E. No. 59-1 at 22). She

says she "reviewed the complaint and other documents, prior to their filing, reviewed and signed her attached declaration, refused an individual offer of settlement, and has pursued this case as a class action from the beginning with the goal of obtaining relief for the members of the class." (*Id.*). *Third*, she highlights her participation in discovery, noting that she "responded to Defendant's discovery requests and reviewed the responses before they were sent to Defendant." (*Id.*). *Fourth*, she states that she "has an understanding of her role and duties as a class representative." (*Id.*) (citing Kausar Aff. ¶¶ 14-21). In particular, she says she "is representing other people in the same situation and has the responsibility to act in their best interests." (D.E. No. 59-1 at 22). Finally, Kausar also asserts that she "has no conflicts with any of the class members nor does she have any interests antagonistic to or in conflict with the class." (*Id.*).

GC counters that "fundamental conflicts" between Kausar's interests and those of the putative class members preclude a finding of adequacy. (D.E. No. 73 at 26). According to GC, "[i]t is certainly conceivable some putative class members will claim to have been harmed by the same conduct that benefitted other members of the class." (*Id.* at 26-27). In other words, GC says that some putative class members may have benefitted from the letter because if they contacted GC in any form (i.e., not just in writing) to dispute their debt or to request the name and address of the original debtor, GC would have honored those requests. (*Id.* at 27). So, for those people, GC's letter was helpful, not harmful. (*Id.* at 27). GC also raises the issue of damages, arguing that Kausar's choice to forgo actual damages and seek only statutory damages creates the potential for a conflict of interest with putative class members who may want to seek actual damages. (*Id.*). GC asserts that certification of Kausar's proposed class would preclude putative class members who suffered actual damages from recovering them. (*Id.* at 27-28).

As Kausar points out, GC's argument appears inconsistent with applicable caselaw. For example, the Eleventh Circuit rejected GC's precise argument in a case involving the same debt-collection letter at issue here:

> there are two problems with GC Services' argument. First, at this stage, the record contains no evidence that any consumer actually benefitted from its purportedly more permissive policy. Second, and more importantly, while some consumers may have benefitted from GC Services' lenient policy, no consumer could have benefitted from its FDCPA violation.

*Dickens v. GC Services Ltd. P'ship.*, 706 F. App'x 529, 536 (11th Cir. 2017). In the same case, the Eleventh Circuit also rejected GC's damages argument, explaining that "any conflict between [the named plaintiff] and class members who have suffered actual damages is especially minimal given that in the rare circumstance in which a class member suffered actual damages, the class member could simply opt out of the class and pursue litigation on his own." *See id.* at 535-36. In fact, as another court in this District observed, "a potential sub-class, if necessary, can be created, to include the class members that have sustained actual damages in response to [the defendant's] letters." *Grubb*, 2017 WL 3191521, at *24. So too here. Kausar is thus an adequate class representative for purposes of Rule 23(a)(4).

### 2. Class Counsel's Adequacy

Because the parties do not dispute the adequacy of class counsel, the Court will consider the issue "strictly through the lens of Rule 23(a)(4)." *See Dewey*, 681 F.3d at 181 n.13. Kausar submits a declaration on behalf of her attorney, Mr. Ryan Gentile, that confirms Mr. Gentile's adequacy to serve as class counsel. (D.E. No. 59-8 ("Gentile Decl.")). For example, since 2007 Mr. Gentile has "worked on primarily consumer cases including bankruptcy cases and claims under the FDCPA." (*Id.* ¶ 6(a)). He has also been appointed sole class counsel in three previous FDCPA class actions. (*See id.* ¶ 6(c)). Based on these facts, his declaration as a whole, and his

prior submissions in this case, the Court is satisfied that Mr. Gentile would adequately represent the proposed class.

### viii. Predominance

As noted above, courts considering class certification under Rule 23(b)(3) analyze the commonality and predominance requirements together. *Sullivan v. DBInvestments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) ("We consider the Rule 23(a) commonality requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement, and therefore deem it appropriate to analyze the two factors together, with particular focus on the predominance requirement.") (citation and internal quotation marks omitted). Under Rule 23(b)(3), a class action cannot be maintained unless, among other things, the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." This predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Under the predominance requirement:

> a court at the certification stage must examine each element of a legal claim through the prism of Rule 23(b)(3). A plaintiff must demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members. Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.

*Marcus*, 687 F.3d at 600 (citations and internal quotation marks omitted).

Kausar alleges that GC sent her and all putative class members identical or substantially similar debt-collection letters that violated § 1692g(a)(4) and § 1692g(a)(5) of the FDCPA. (*See* D.E. No. 59-1 at 25). "Therefore, the potential class members' claims turn on the same legal determination, *i.e.*, whether the content of these communications are in violation of [the FDCPA]."

*Grubb*, 2017 WL 3191521, at *22. Courts in this District routinely find predominance in similar contexts. *See, e.g.*, *id.*; *Nyby*, 2017 WL 3315264, at *6; *Weissman*, 2015 WL 3384592, at *3; *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *7 (D.N.J. Sept. 10, 2013); *Stair v. Thomas & Cook*, 254 F.R.D. 191, 201 (D.N.J. 2008).

In opposition, GC reiterates its standing arguments. GC contends that "individual questions regarding the proposed class members' standing to bring suit overwhelm any questions common to the class, thus precluding class certification . . . ." (D.E. No. 73). But again, GC's arguments conflict with binding Third Circuit precedent. *See Neale*, 794 F.3d at 363 (holding that "unnamed, putative class members need not establish Article III standing."). The Court therefore finds that Kausar has satisfied the commonality and predominance requirements.

### ix. Superiority

To satisfy Rule 23(b)(3)'s superiority requirement, the party seeking certification must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) provides that "[t]he matters pertinent to these findings include": (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential*, 148 F.3d at 316 (citation and internal quotation marks omitted).

For the first two factors, Kausar states that "no class member has demonstrated an interest in controlling the prosecution of the action because there are no other cases against GC involving

the issues presented in this case by any proposed member." (D.E. No. 59-1 at 27). For the third factor, Kausar submits that this "forum is desirable because the proposed class contains New Jersey residents only." (*Id.*). For the fourth factor, Kausar asserts that "there will be no difficult case-management issues because the facts and claims are very straightforward." (*Id.*). To that end, Kausar explains that the "evidence necessary to prosecute the case is within Defendant's records," and her claim presents "a straightforward question concerning the legality of a printed form letter and standardized practice." (*Id.*). This claim, according to Kausar, "is significantly simpler than many other claims that are routinely certified as class actions, such as securities and price fixing cases." (*Id.*). GC does not address the superiority requirement.

For the reasons Kausar identifies, the Court agrees that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Indeed, as Kausar points out, "numerous other [c]ourts within this District have routinely held that class actions are the superior method to adjudicate FDCPA cases that were based on form collection letters." (*Id.* at 26) (citing *Griffin*, 2017 WL 3872401, at *5; *Nyby*, 2017 WL 3315264, at *6; *Nepomuceno*, 2016 WL 3392299, at *10; *Weissman*, 2015 WL 3384592, at *4; *Gregory v. McCabe Weisberg & Conway, P.C.*, No. 13-6962, 2014 WL 2615534, at *7 (D.N.J. June 12, 2014); *Williams*, 2013 WL 5435068, at *11; *Little-King*, 2013 WL 4874349, at *7; *Still v. JBC Assocs., P.C.*, No. 02-3550, 2005 WL 1334715, at *6 (D.N.J. June 3, 2005)).

## IV.  Conclusion

For the foregoing reasons, the Court DENIES GC's motion to compel arbitration and GRANTS Kausar's motion for class certification. An appropriate Order accompanies this Opinion.

_s/Esther Salas_

**Esther Salas, U.S.D.J.**